Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| NORTHWESTERN SELECTA, INC.<br><br>Recurrente<br><br>v.<br><br>NEGOCIADO DE TRANSPORTE Y OTROS SERVICIOS PÚBLICOS<br><br>Recurrido | KLRA202300666 | *Revisión* procedente del Negociado de Transporte y otros Servicios Públicos<br><br>Boleto Núm. 809 Solicitud Núm. 852100 Hoja de Intervención Núm. 849546<br><br>Sobre: Recurso de Revisión por Expedición de Boleto de Infracción |
|---|---|---|

Panel integrado por su presidente el Juez Bermúdez Torres, el Juez Adames Soto y la Juez Aldebol Mora

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de abril de 2024.

I.

El 21 de octubre de 2021, Francis González Camacho, un inspector del Negociado de Transporte y Otros Servicios Públicos, intervino con un camión de Northwestern Selecta, Inc. De dicha intervención emitió el boleto número 809, por una multa de $2,000.00, por carecer de la correspondiente autorización para prestar servicios públicos mediante paga. Dicho boleto fue emitido a tenor con el Reglamento Núm. 9293 del Código de Reglamentos del Negociado de Transporte y Otros Servicios Públicos aprobado el 23 de julio de 2021.

En consecuencia, el 27 de octubre de 2021, Northwestern Selecta, Inc., presentó *Recurso de Revisi[ó]n de Boleto*, en el cual alegó que la infracción imputada no fue cometida ya que: (1) para que la misma les fuera imputable Northwestern tenía que dedicarse

Número Identificador

SEN2024_____

a prestar, ofrecer o promocionarse para ofrecer servicios públicos mediante paga sin haber previamente solicitado y obtenido la correspondiente autorización del Negociado y; (2) que Northwestern utiliza sus camiones de manera exclusiva y privada sin que medie paga, por estos camiones ser para transportar la carga que les venden a sus clientes. Finalmente, solicitó que se señalara una vista administrativa en la cual se pudiera refutar la infracción imputada, por entender que no se habían cometido los actos constitutivos de la infracción.

Posteriormente, el 31 de enero de 2022, el Reglamento Núm. 9293, bajo el cual se emitió el boleto en cuestión, fue declarado nulo por este Tribunal de Apelaciones[1]. El 4 de noviembre de 2022, se llevó a cabo la vista administrativa y en esta Northwestern argumentó que por haberse declarado nulo el Reglamento, el boleto debería declararse igualmente nulo. El 28 de noviembre de 2023, el Negociado emitió *Resolución y Orden* junto al *Informe del Oficial Examinador[2]*, en la cual se declaró No Ha Lugar el *Recurso de Revisión* radicado por Northwestern.

Inconforme, el 28 de diciembre de 2023, Northwestern acudió ante nos mediante *Recurso de Revisi[ó]n Judicial de Decisi[ó]n Administrativa del Negociado de Transporte y Otros Servicios P[ú]blicos.* Alega:

**Primer Error:**

ERRÓ EL NEGOCIADO AL NO RESOLVER QUE EL BOLETO IMPUGNADO ES NULO POR HABERSE DECLARADO NULO EL REGLAMENTO NÚM. 9293 BAJO EL CUAL SE EMITIÓ DICHO BOLETO, HACIENDO SU INACCIÓN UNA ARBITRARIA, IRRAZONABLE, CONTRARIO A DERECHO, Y VIOLA LOS DERECHOS A UN DEBIDO PROCESO DE LEY DE NWS.

---

[1] El Reglamento fue declarado nulo de su faz por este Tribunal mediante los recursos consolidados KLRA202100498 y KRA202100501, ante el incumplimiento con la Sec. 2.8(d) de la LPAU, 3 LPRA § 9618.
[2] El Informe del Oficial Examinador fue emitido el 27 de octubre de 2023.

**Segundo Error:**

ERRÓ EL NEGOCIADO AL DENEGAR EL RECURSO DE REVISIÓN POR SER LA DECISIÓN UNA ARBITRARIA E IRRAZONABLE QUE NO ESTÁ FUNDADA EN EVIDENCIA, QUE MATERIALMENTE AFECTA A LA RECURRENTE Y QUE NO ESTÁ DE ACUERDO CON LA PROPIA LEY QUE EL NEGOCIADO TIENE LA RESPONSABILIDAD DE IMPLEMENTAR POR LO QUE SU ACTUACI[Ó]N DE TRATAR A NWS COMO UNA COMPAÑÍA DE SERVICIO PÚBLICO CUANDO NO LO ES POR DISPOSICIÓN EXPRESA DE LEY CONSTITUYE UN ABUSO DE SU DISCRESI[ÓN].

El 12 de enero de 2024, emitimos *Resolución* otorgándole 30 días al Negociado para que presentara su posición en torno al recurso incoado. El 25 de marzo de 2024 el Negociado, representado por la Oficina del Procurador General (Procurador General) presentó *Moción Informativa y Solicitud de Nuevo Término para Comparecer* solicitando un término adicional de veinte (20) días para presentar su posición en torno al recurso y que se expida una orden para que incluya al Procurador General en las notificaciones posteriores de este recurso. El 3 de abril de 2024 emitimos *Resolución* concediendo el término de veinte (20) días e instruyendo a Secretaría a incluir al Procurador General en las sucesivas notificaciones.

En cumplimiento, el 15 de abril de 2024 el Procurador General presentó *Alegato*. Planteó que el decreto de nulidad del Reglamento Núm. 9293 fue impartido con posterioridad a la expedición del boleto en disputa. Añadió que dicha nulidad no implicaba que se tornaran nulas las actuaciones del Negociado debido a que la falta imputada no fue tipificada por el Reglamento Núm. 9293, sino que constituye una infracción previamente dispuesta por la Ley Núm. 109-1962, conocida como la Ley de Servicio Público, que le confirió autoridad al Negociado para imponer multas administrativas.

Señala que la Ley Núm. 109-1962 establece en su artículo 2(c) que "[t]oda persona natural o jurídica regulada por el Negociado de Transporte y otros Servicios Públicos, incluyendo vehículos de motor comercial, necesita autorización expedida por éste para poder operar

en Puerto Rico"[3]. Añade, que el cumplimiento con ese artículo es exigible con independencia de la existencia o vigencia de un reglamento promulgado para su implementación, como lo es el Reglamento Núm. 9293 y que por esto el boleto fue expedido correctamente y dentro de la autoridad concedida por ley a la agencia.

Con el beneficio de la comparecencia de las partes, del derecho y jurisprudencia aplicable, procedemos a resolver.

## II.

## A.

La Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), Núm. 38-2017, según enmendada[4], establece nuestra facultad revisora sobre las decisiones emitidas por los organismos administrativos. Esta revisión judicial tiene como propósito limitar la discreción de las agencias y asegurarse de que desempeñen sus funciones conforme a la ley y de forma razonable[5]. En esta dinámica, las decisiones administrativas gozan de una presunción de legalidad y corrección, por lo que las conclusiones e interpretaciones de los organismos administrativos especializados, merecen gran deferencia[6].

El estándar de revisión de una decisión administrativa se circunscribe a determinar si esta actuó de forma arbitraria, ilegal o irrazonable, constituyendo sus acciones un abuso de discreción[7]. Al desempeñar esta función revisora, estamos obligados a considerar la especialización y experiencia de la agencia, diferenciando entre las cuestiones de interpretación estatutaria, área de especialidad de

---

[3] 27 LPRA § 1101(c).

[4] 3 LPRA § 9601.

[5] *Ifco Recycling* v. *De Desperdicios Sólidos*, 184 DPR 712, 743 (2012).

[6] *Capó Cruz* v. *Junta de Planificación*, 204 DPR 581, 591 (2020); *Torres Rivera* v. *Pol. de Puerto Rico*, 196 DPR 606, 626 (2016); *Batista, Nobbe* v. *JTA. Directores*, 185 DPR 206, 212 (2012); *Ifco Recycling*, 184 DPR, pág. 744.

[7] *Capó*, 204 DPR, pág. 592; *Torres*, 196 DPR, pág. 626; *Ifco Recycling*, 184 DPR, pág. 745, citando a *Empresas Ferrer* v. *ARPE,* 172 DPR 254, 264 (2007).

los tribunales, y las cuestiones propias de la discreción o pericia administrativa[8].

En tal sentido, estamos facultados a determinar: (1) que el remedio concedido por la agencia fue el apropiado; (2) la revisión de las determinaciones de hecho conforme al criterio de evidencia sustancial revisión de las determinaciones de hecho conforme al criterio de evidencia sustancial; y (3) determinar si las conclusiones de derecho fueron correctas mediante su revisión completa y absoluta[9]. Sostendremos las determinaciones de hecho, en tanto y en cuanto obre evidencia suficiente en el expediente de la agencia para sustentarla[10]. En cuanto a las determinaciones de Derecho, tenemos amplia facultad para desplegar nuestra función revisora, pues, estamos en igualdad de condiciones para interpretar los estatutos[11]. Claro, ello no implica que podamos descartar libremente las conclusiones e interpretaciones de la agencia[12], pues es norma reiterada que a toda determinación administrativa le cobija una presunción de regularidad y corrección[13]. Esta presunción, apuntalada en el conocimiento especializado de la agencia, debe respetarse mientras la parte que la impugne no produzca evidencia suficiente para derrotarla[14].

Es decir, se presume que el organismo administrativo posee un conocimiento especializado en aquellos asuntos que le fueron encomendados por el legislador que merece ser visto con respeto y deferencia. Por ello, nuestra función revisora se circunscribe a evaluar la razonabilidad de la decisión recurrida, a la luz de las

---

[8] *Ifco Recycling*, 84 DPR, pág. 744; *Maranello et al.* v. *OAT,* 186 DPR 780, 792 (2012).

[9] *Capó*, 204 DPR, pág. 591; *Torres*, 196 DPR, *págs.* 626-627; *Pagán Santiago et al.* v. *ASR*, 185 DPR 341, 358 (2012).

[10] *Capó*, 204 DPR, pág. 591; *Torres*, 196 DPR, pág. 627; *Ifco Recycling*, 184 DPR, pág. 744.

[11] 3 LPRA § 9675.

[12] *Batista*, 185 DPR pág. 217.

[13] *Capó*, 204 DPR, pág. 591; *Torres*, 196 DPR, pág. 627; Batista, 185 DPR, pág. 217.; *Ifco Recycling*, 184 DPR, pág. 744.

[14] *Torres*, 196 DPR, pág. 626; *Trigo Margarida* v. *Junta Directores,* 187 DPR 384, 393-394 (2012); *Batista,* 185 DPR pág. 215; *Ifco Recycling*, 184 DPR, pág. 744.

pautas trazadas por el legislador y el criterio de evidencia sustancial[15].

### III.

Northwestern plantea en su recurso que erró el Negociado en su *Resolución* declarando No Ha Lugar el *Recurso de Revisión* mediante el cual se impugnaba la validez de un boleto emitido a tenor de un reglamento declarado nulo en derecho, por carecer este reglamento de eficacia jurídica y por no ser imputables los actos constitutivos de la infracción. Le asiste razón. Veamos por qué.

Es sabido, que cuando un reglamento es declarado nulo, resulta ineficaz cualquier ejercicio amparado en sus disposiciones y deja de ser jurídicamente vinculante. Nuestro más Alto foro ha establecido que una actuación nula es inexistente y por tanto no genera consecuencias jurídicas[16].

El 31 de enero de 2022, un panel hermano emitió *Resolución* en la que declaró nulo el Reglamento Núm. 9293 por incumplir sustancialmente con la Sección 2.8(d) de la LPAU. Habiendo sido decretado nulo este Reglamento, ningún ejercicio adjudicativo amparado en sus disposiciones, resulta ser válido. Tanto el boleto número 809, como el *Recurso de Revisión* fueron emitidos con anterioridad a la *Resolución* declarando la nulidad del reglamento. Sin embargo, la vista administrativa, el *Informe del Oficial Examinador* y la *Resolución y Orden* del Negociado, tuvieron fecha posterior a la aludida declaración de nulidad del Reglamento.

Es menester aclarar, que, a pesar de la aplicación de la Ley Núm. 109-1962, la expedición del boleto se efectuó en virtud de las disposiciones del Reglamento 9293 declarado nulo *ab initio* y por tanto inexistente. El Negociado debió declarar Ha Lugar el *Recurso*

---

[15] *Batista,* 185 DPR, pág. 216; *Accumail P.R.* v. *Junta Sub. A.A.A.,* 170 DPR 821, 829 (2007); *Otero* v. *Toyota,* 163 DPR 716, 729 (2005); *Pacheco* v. *Estancias,* 160 DPR 409, 432 (2003).

[16] *Brown III* v. *J.D. Cond Playa Grande,* 154 DPR 225 (2001); *Montañez* v. *Policía de Puerto Rico,* 150 DPR 917 (2000).

*de Revisión* por haber sido expedido el boleto en virtud de un Reglamento nulo.

IV.

Por los fundamentos expuestos, se *revoca* la *Resolución* recurrida y se declara Con Lugar el Recurso de Revisión Administrativa.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones